UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| ex rel. JOSEPH FRIED and PUBLIC | § | |
| PROGRAM TESTING ORGANIZATION, | § | |
| | § | |
| *Relators*, | § | Civil Action No. 9:05-CV-245 |
| | § | |
| v. | § | |
| | § | JUDGE RON CLARK |
| HUDSON INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| *Defendant.* | § | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Relators filed suit against Defendant HISD on December 21, 2005 pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, alleging that HISD's one-day plan defrauded the government because: (1) the employees who participated in the program were considered by HISD's Section 218 Agreement and the district's own internal policies to be part-time employees not covered by Social Security and (2) these employees were not hired for a bona fide employment relationship. Defendant moved for summary judgment on several grounds, one of which is that the court lacks jurisdiction to hear the Relators' claims because they are not the "original source" under 31 U.S.C. § 3730(e)(4)(A). The court does not have jurisdiction over the Relators' claims and grants Defendant's motion.[1]

---

[1] Relators filed a similar suit against West Independent School District ("WISD") in the Western District of Texas, alleging that WISD's one-day work program was fraudulent for essentially the same reasons they claim HISD's program was. WISD's Motion for Summary Judgment was granted on May 10, 2007, on the grounds that the court lacked jurisdiction to hear Relators' claims. 6:05-CV-386 [Doc. # 47]; Def. Mot. Sum. J. Ex. 12.

## I. Background

This dispute centers around Defendant HISD's one-day work program. As a general rule, Social Security benefits are payable to the spouses of covered retired, disabled, or deceased workers; however, if both spouses work in positions covered by Social Security, each receives the greater of either the benefits they personally earned, or those their spouse earned. This is referred to as the Government Pension Offset, or GPO. An exemption was provided from the GPO if an individual's last day of state or local employment was in a position covered by both Social Security and the state or local government's pension plan. Under HISD's one-day work program, which it administered between June 2003 and June 2004, approximately 1,645 workers were hired into full-time positions which were covered both by Social Security and the Teacher Retirement System ("TRS"). Most of these employees ultimately chose not to work more than one day.

In August 2002, the United States General Accounting Office ("GAO") published a report entitled "Social Security Administration: Revision to the Government Pension Offset Exemption Should Be Considered." The report was issued after an investigation which found that as in 2002, more than 3,500 workers in Texas used or planned to use the last day exemption. Congressional hearings were held in May 2003 and July 2004 concerning the GPO loophole; ultimately, Congress changed existing law in March 2004 to require five years of employment in positions covered by both Social Security and state or local pension plans before an individual would be eligible for benefits.

Beginning in April 2005, Relators submitted a series of requests pursuant to the Texas Public Information Act ("TPIA") to HISD, requesting information about its one-day program. In

December 2005, the Social Security Administration's Office of the Inspector General ("OIG") conducted an on-site audit of the program; the OIG publicly released their report in December 2006, which was critical of the Social Security Administration and claimed that it had misapplied the law by allowing programs like HISD's one-day work program to continue.

Relators filed the instant suit on December 21, 2005, alleging that HISD's one-day plan defrauded the government because: (1) the employees who participated were considered by HISD to be part-time employees, in which case they would not have been covered by Social Security as per HISD's Section 218 Agreement[2] and the district's own policies, and (2) these employees were not hired for a bona fide employment relationship (i.e., they paid their own wages and payroll taxes and were not hired with the expectation that they would provide employment services). HISD filed this Motion for Summary Judgment on June 28, 2007.

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Movant may show that the undisputed material facts affirmatively establish a

---

[2]Section 218 Agreements are promulgated between a state and the Social Security Administration to provide Social Security coverage to state and local government employees. *See* 42 U.S.C. § 418. The Section 218 Agreement between Texas and the federal government was originally executed in 1951 and has been modified on many occasions after entities like HISD enter into agreements with the State Department of Public Welfare ("DPW"). The government pension plan for most Texas educational employees is the TRS, and those employees are only given Social Security benefits if they are covered under the Section 218 Agreement. With respect to HISD, their Section 218 Agreement with the DPW prevents the district from extending Social Security coverage to workers in part-time positions. *See* Def. Mot. Sum. J. Ex. 1C-4 (HISD's Section 218 Agreement with the DPW).

right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986).

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example, if the claim simply makes no economic sense) non-movants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. But, the court is not going to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996)(citations omitted); *see*

*also* Local Rule CV-56(c) and Appendix 1, ¶ 3 of the Order Governing Proceedings in this case. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468; 112 S. Ct. 2072, 2083 (1992).

### III. Analysis

As a preliminary matter, the court notes that Defendant's jurisdictional challenge is properly presented in a motion for summary judgment. *See, e.g., United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 350 (5th Cir. 2003)("[A] challenge under the [False Claims Act] jurisdictional bar is necessarily intertwined with the merits," and is therefore properly treated as a summary judgment motion.).

<u>"Original Source" Under the False Claims Act</u>

Defendant argues that the court lacks jurisdiction to hear Relators' claims because they are not the "original source" under 31 U.S.C. § 3730(e)(4)(A). Section 3730(e)(4)(A) provides that:
> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

Under Section 3730(e)(4)'s jurisdictional inquiry, the court must ask three questions: (1) whether there has been a public disclosure of the allegations or transactions, (2) whether the qui tam action is based upon such publicly disclosed allegations, and (3) if so, whether the relator is

the original source of the information." *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healtcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004)(quoting *Laird,* 336 F.3d at 352). If the answer to questions one and two are "yes," the court must then consider question three. *Reagan*, 384 F.3d at 176.

   *1. Public Disclosure*

In order to bar a qui tam suit, a public disclosure must contain enough information to "enable [the government] adequately to investigate the case and make a decision whether to prosecute." *United States ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528, 540 (E.D. Tx. 1999)(citation omitted). The False Claims Act does not require that the fraudulent actions which are the subject of the public disclosure involve the specific Defendants and geographical area involved in the suit; rather, all that is necessary is enough information to "set the government squarely on the trail of the alleged fraud without the assistance of relators." *Id.*

Here, it was public knowledge that employees in Texas were claiming Social Security benefits based on the GPO exemption in cases where they worked only one day as early as August 2002, when the GAO's report was issued. *See* Def. Mot. Sum. J., Ex. 3A. While the report realized the potential for abuse in the GPO exemption, it determined that the exemption was lawful, even in the case of one-day programs. *Id.* at 4. The exemption was the subject of Congressional hearings in May 2003, which ultimately led to the amendment of the law to require five years of employment, rather than just one day, to be eligible for benefits. While HISD was not one of the school districts advertised in educational trade journals as being receptive to hiring one-day employees, *see* Def. Mot. Sum. J. Exs. 7-10, the public disclosures do not have to involve the specific Defendant involved in the suit. *Johnson*, 33 F. Supp. 2d at 540.

Relators argue that the crux of their fraud claims, namely that HISD did not treat one-day workers as part-time employees (who would not be eligible for Social Security benefits) and did not enter into bona fide employment relationships with these employees, were not the subject of the GAO Report or the Congressional hearings, and were in fact "completely unknown" because HISD was the sole possessor of this information. Rels.' Resp. to Def. Supp. Mot. Sum. J., p. 3. However, the Fifth Circuit held in *Reagan* that responses to requests under the Freedom of Information Act ("FOIA") are administrative reports constituting public disclosures within the meaning of the False Claims Act. *Reagan*, 384 F.3d at 176. Beginning in April 2005, Relator Fried began requesting documentation from Defendant HISD pursuant to the TPIA relating to the one-day work program. Through his requests, he procured a copy of HISD's Section 218 Agreement in May 2005, which stated that part-time positions were excluded from coverage, as well as other information regarding eligibility for benefits based on part- or full-time employee status. *See* Def. Mot. Sum. J., Exs. 1C-1-C-9. Relators' argument that these public disclosures did not address all of the information the fraud claims are based on goes to the "based upon" jurisdictional prong and the "original source" exception, both of which are addressed below. There is no doubt that the GAO report, the Congressional hearing records, and the responses to Relator Fried's TPIA requests are public disclosures within the meaning of the statute.

    2. "Based On" The Public Disclosure

The Fifth Circuit has defined "based upon" to encompass those situations where the relator's allegations are "substantially similar to" or "supported by" the publicly disclosed allegations or transactions, even if the relator was not aware of the public disclosure. *See United States ex rel. McKenzie v. Bell South Telecomms., Inc.*, 123 F.3d 935, 940 (5th Cir. 1997), *cert.*

*denied*, 522 U.S. 1077 (1998). A qui tam action which is "even partly based upon public allegations or transactions is nonetheless 'based upon' such allegations or transaction[s]" for the purposes of the FCA *Reagan*, 384 F.3d at 176 (citation omitted).

As mentioned *supra*, Relators argue that certain information regarding HISD's particular policies with respect to the one-day program were not publicly disclosed prior to their involvement. However, the GAO's August 2002 report made it clear that abuses could result from the GPO loophole, a point of view reinforced by Congressional hearings and the subsequent change of the law to require five years employment before benefits could be obtained. The responses Relator Fried received in response to his TPIA requests from HSID eventually provided him with the Section 218 Agreement, stating that part-time employees did not receive Social Security benefits, and other information as to the eligibility of employees for benefits based on their employment status. While the Relators may be correct that not every single detail of HISD's programs was known prior to their investigation, this qui tam action is clearly at least "partly based" on previous public disclosures, and that is all that is required.

    *3. "Original Source"*

Having established that there were public disclosures on which the instant qui tam action is based at least partly upon, the court must consider whether the "original source" exception applies.

Section 3730(e)(4)(B) defines an "original source" as "an individual who [(1)] has direct and independent knowledge of the information on which the allegations are based and [(2)] has voluntarily provided the information to the Government before filing an action under this section which is based on the information." "Direct knowledge" has been found to mean that "first-hand

knowledge of the material elements of the alleged fraud which the relator has gained through his own efforts and not acquired from the labors of others." *Johnson*, 33 F. Supp. 2d at 541 (citation omitted). *See also Wercinski v. IBM, Corp.*, 982 F. Supp. 449, 461 (S.D. Tex. 1999)( relators did not have "direct" knowledge where the allegations regarding Defendant's billing practices resulted from a previous audit performed by another person; the relators did not "obtain knowledge ... through their own labor, but rather learned it secondhand...."); *United States ex rel. Koerner v. Crescent City E.M.S., Inc.*, 946 F. Supp. 447, 453 (E.D. La. 1996)(relator who discovered Defendant's alleged misconduct from one of Defendant's former employees did not have "direct" knowledge because relator "was neither a close observer of or otherwise involved in the fraudulent activity which is the subject [of] his complaint."). Similarly, "independent knowledge" has been defined as knowledge which is not dependent on a public disclosure. *Johnson*, 33 F. Supp. 2d at 541; *United States ex rel. Springfield Terminal Ry. v. Quinn*, 304 U.S. App. D.C. 347, 356 (D.C. Cir. 1994). The Supreme Court recently clarified that "information on which the allegations are based" refers to the Relator's allegations, not the publicly disclosed allegations. *Rockwell Int'l Corp. v. United States*, 126 S. Ct. 1397, 1408 (2007).

It is undisputed that Relators voluntarily provided their information to the OIG before commencing this action. Therefore, the relevant inquiry is whether Relators had direct and independent knowledge of HISD's practices regarding the one-day program which form the basis of the fraud claims at issue and which did not come from the Social Security Administration, GAO reports, Congressional hearings, responses to TPIA requests, or other public disclosures. At the time Relators filed this lawsuit, it is undisputed that the following facts were known:

      1. The August 2002 GAO Report was the result of an investigation into a practice, which was widespread in Texas, that individuals were taking advantage of one-day programs offered by school districts to avoid the GPO.  Such programs were advertised by the districts and trade magazines, and allowed participating individuals to avoid the GPO by working for at least one day in Social Security covered positions.  Individuals in these programs typically paid Social Security taxes out of their hourly wages, and the vast majority only worked one day.  The GAO Report found that the practice was lawful, but that abuses were possible.  *See* Def. Mot. Sum. J. Exs 3A and 3B.

      2. The GAO Report noted that "[s]ome schools reported that they charge a processing fee, ranging from $100-$500, to hire these workers."  Def. Mot. Sum. J. Ex. 3B, p. 4.  HISD charged a fee, which was disclosed to Relator Fried by HISD in response to his TPIA requests.  Relators used this fee as one basis for their allegations, on the theory that fraud existed because a bona fide employment relationship was not formed between HISD and their employees.  Rels. Comp. ¶¶ 35-36.

      3.  HISD had a Section 218 Agreement with the DPW, which specifically excluded part-time employees from receiving Social Security benefits.

      4.  HISD provided a memo to Relator Fried in response to a TPIA request which stated that for the scenario Relator Fried presented in his question, an individual working "at least 20 hours per week (making him eligible for TRS)," the only employees HISD had that would fit that scenario were Social Security workers.  Def. Mot. Sum. J. Ex. 1C-3.

Based on these undisputed facts, Relators cannot be the original source of the information that forms the basis for their fraud allegations.  Relators argue that they are in fact the original source of three pieces of information that allegedly establish HISD's fraudulent conduct: (1) HISD's own policy not to extend Social Security coverage to employees working 20 hours or less per week; (2) HISD's Section 218 Agreement, which prevented HISD from providing Social Security coverage to workers in part-time positions; and (3) HISD failure to engage in a bona fide employment relationship with their employees, because the employees paid their own payroll taxes and wages, and were not hired with the expectation that they would provide employment services. Rels. Resp. to Def. Mot. Sum. J., p.16.

Every one of these facts has either been publicly disclosed or can easily be inferred from public disclosures. For example, Relators' argument that HISD's definition of a part-time worker was not publicly disclosed is belied by the memo sent to Relator Fried in which HISD acknowledged that individuals working at least 20 hours a week were in Social Security positions. While perhaps not a "smoking gun," the clear implication of this disclosure is that a part-time worker, not covered by Social Security pursuant to the Section 218 Agreement, must be someone who works less than 20 hours per week. A second example is the disclosure in the GAO Report (and by HISD itself in the paperwork it provided to one-day employees) that school districts charged one-day employees a fee as part of the application process. In the ordinary course, employment relationships are typically not accompanied by such fees; again, the clear implication of such a disclosure, as Relators themselves note in their Complaint, is that this relationship was something less than a genuine one. The statement in the GAO Report that teachers in Texas "typically worked a single day" is still further evidence that Relators' allegations that a bona fide employment relationship did not exist were publicly disclosed prior to this qui tam suit.

In short, Relators cannot be the original source of the information which forms the basis for their FCA claims. This is clearly not the situation where the "investigation or experience of the relator...translate[d] into some additional compelling fact," nor is it the case where the Relator "demonstrate[d] a new and undisclosed relationship between disclosed facts, that puts a government agency 'on the trail' of fraud, where that fraud might otherwise go unnoticed." *Reagan*, 384 F.3d at 179. Rather, this is the situation in which the Relators "simply stumbled upon a seemingly lucrative nugget," and attempted to cash in. *Id.* at 177.

## IV. Conclusion

For these reasons, the court does not have jurisdiction over the Relators' claims and grants Defendant's Motion For Summary Judgment.

IT IS ORDERED that Defendant Hudson Independent School District's Motion For Summary Judgment **[Doc. # 20]** is GRANTED.

IT IS FURTHER ORDERED that all other pending motions are DENIED as moot.

So **ORDERED** and **SIGNED** this **26** day of **October, 2007.**

_____
Ron Clark, United States District Judge